UNITED STEELWORKERS OF
AMERICA, AFL–CIO–CLC,
Petitioner,

v.

John A. PENDERGRASS, Assistant Secretary of Labor, Occupational Safety and Health Administration, United States Department of Labor, Respondent,

and

The State of New York, the State of New Jersey, the State of Connecticut and National Paint & Coatings Association, Intervenors.

UNITED STEELWORKERS OF
AMERICA, AFL–CIO–CLC,
Petitioner,

v.

John A. PENDERGRASS, Assistant Secretary of Labor, Occupational Safety and Health Administration, United States Department of Labor, Respondent,

and

The State of New Jersey, Chemical Manufacturers Association, American Petroleum Institute & Atlantic Richfield Company, and National Paint & Coatings Association, Intervenors.

PUBLIC CITIZEN, INC., et
al., Petitioners,

v.

John A. PENDERGRASS, Assistant Secretary of Labor, Occupational Safety and Health Administration, United States Department of Labor, Respondent,

and

The State of New Jersey, Chemical Manufacturers Association, National Paint & Coatings Association, American Petroleum Institute & Atlantic Richfield Company, Intervenors.

COMMONWEALTH OF
MASSACHUSETTS,
Petitioner,

v.

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, Secretary of Labor, United States Department of Labor, Respondent.

PEOPLE of the STATE OF
ILLINOIS, Petitioner,

v.

UNITED STATES DEPARTMENT OF LABOR and Raymond Donovan, Secretary of the United States Department of Labor, Respondents.

The STATE OF NEW YORK,
Petitioner,

v.

John A. PENDERGRASS, Assistant Secretary of Labor, Occupational Safety and Health Administration, United States Department of Labor, Respondent.

Nos. 83–3554, 83–3561, 83–3565, 84–3066, 84–3093 and 84–3128.

United States Court of Appeals,
Third Circuit.

Argued March 23, 1987.

Decided May 29, 1987.

George H. Cohen, Gary L. Sasso, David A. Sklansky, Washington, D.C., Mary-Win O'Brien, United Steelworkers of America, Pittsburgh, Pa., Laurence Gold, Washington, D.C., Joseph Lurie, Philadelphia, Pa., for petitioner United Steelworkers of America, AFL–CIO–CLC.

David C. Vladeck, Alan B. Morrison, Public Citizen Litigation Group, Washington, D.C., for petitioners, Public Citizen, et al.

George R. Salem, Sol. of Labor, Cynthia L. Attwood, Associate Sol. for Occupational Safety and Health, Joseph M. Woodward, Sandra Lord (argued), Asst. Counsel, for Appellate Litigation.

Barbara Werthmann, Atty., U.S. Dept. of Labor, Washington, D.C., for U.S.

Before GIBBONS, Chief Judge, and FISHER, Chief Judge [*] and KELLY, District Judge [**].

## OPINION OF THE COURT

GIBBONS, Chief Judge.

United Steelworkers of America and Public Citizen, Inc., *et al.*, petitioners in the petition for review which this court granted in *United Steelworkers of America v. Auchter*, 763 F.2d 728 (3d Cir.1985), now move to enforce that judgment. The respondent to the present motion, John A. Pendergrass, Assistant Secretary of Labor for Occupational Safety and Health, United States Department of Labor, has been substituted for Thorne G. Auchter, his predecessor, as a party in this action. Petitioners contend that the Secretary has not complied with our judgment. In *United Steelworkers*, we held that the Hazard Communication Standard, promulgated pursuant to section 6 of the Occupational Safety and Health Act of 1970 (OSH Act), Pub.L. No. 91–596, 84 Stat. 1590 (codified as amended at 29 U.S.C. §§ 651–678 (1982)), is valid and may be applied in the manufacturing sector, but we directed the Secretary "to reconsider its application to employees in other sectors, and to order its application in those sectors unless he can state reasons why such application would not be feasible." 763 F.2d at 743. The Secretary contends that he has fully complied with that judgment, which was formally issued on July 8, 1985. He maintains this contention despite the fact that no final position with respect to the application of the hazard communication standard outside the manufacturing sector has been taken, and the fact that there is no intention to take such a position until "early 1988". We conclude that the Secretary has not acted in compliance with this court's judgment and has withheld or unreasonably delayed agency action, and that further relief is necessary.

### I.

In 1970, Congress enacted the OSH Act and directed the Secretary of Labor to promulgate occupational safety and health standards to further the purpose of the OSH Act—that is, "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions...." 29 U.S.C. §§ 651(b), 655(b)(1). Section 6(b)(7) of the OSH Act explicitly requires that

[*] Hon. Clarkson S. Fisher, Chief Judge, United States District Court for the District of New Jersey, sitting by designation.

[**] Hon. James M. Kelly, United States District Court Judge for the Eastern District of Pennsylvania, sitting by designation.

[a]ny standard promulgated under this subsection shall prescribe the use of labels or other appropriate forms of warning as are necessary to insure that employees are apprised of all hazards to which they are exposed, relevant symptoms and appropriate emergency treatment, and proper conditions and precautions of safe use or exposure.

29 U.S.C. § 655(b)(7). Section 7(b) of the OSH Act, as amended, provides that "[a]n advisory committee may be appointed by the Secretary to assist him in his standard-setting functions under section 655 of this title." 29 U.S.C. § 656(b). A Standards Advisory Committee on Hazardous Materials Labeling (Advisory Committee) was established in 1974 and was charged with

develop[ing] guidelines for categorizing and ranking hazards of materials, and guidelines for prescribing the required warnings of such hazards and related information on symptomatology, protective steps and equipment, and safe handling procedures, by such means as labels, data sheets, and training requirements.

Report of the Standards Advisory Committee on Hazardous Materials Labeling dated June 6, 1975 at iv. The Advisory Committee was directed to submit within 270 days a report to the Secretary in a form from which regulations could be fashioned. *Id.* at iv, 26. The Advisory Committee submitted its report on June 6, 1975, recommending what it described as a "total system" approach to hazard communication, which included the preparation of Material Safety Data Sheets (MSDSs), labeling, and employee training programs. *See id.* at 4–5. The report, like the OSH Act, referred to all workers, making no distinction among employees in different sectors of the economy. Although the Advisory Committee Report was received by the Secretary in June, 1975, no notice of proposed rulemaking on hazard communication was published for some time. On June 28, 1977 the Secretary published an advance notice of proposed rulemaking on hazardous materials labeling. *See* 42 Fed.Reg. 5,372 (1977). In that advance notice, the Secretary requested "public comment as to

whether a standard requiring employers to label hazardous materials should be developed and what should be contained in such standard to assure that employees are apprised of the hazards to which they are exposed." *Id.* All "interested persons" were "invited to submit written data, views, and arguments concerning a standard on hazardous materials labeling." *Id.* at 5,373. Among the topics on which comments were requested was "[s]upported cost data of the estimated costs of coming into compliance with the recommendations of the advisory committee." *Id.* At this stage in 1977, the notice, like the Advisory Committee Report's recommendations, was addressed to all employers, not only to employers in the manufacturing sector.

On January 16, 1981, more than ten years after the enactment of section 6(b)(7) of the OSH Act, more than five years after the Secretary received the Advisory Committee Report, and almost four years after the June 28, 1977 advance notice of proposed rulemaking, the Secretary issued a notice of proposed rulemaking on hazard identification. *See* 46 Fed.Reg. 4,412 (1981). This notice specified that comments had to be received on or before April 18, 1981, and that hearings would be held at five places between May 26, 1981 and September 1, 1981. The proposed hazard communication standard was to be applicable to employers in Division D (manufacturing), major groups 20–39 in the most recent revision of the Standard Industrial Classification Manual published by the Office of Management and Budget (the manufacturing sector). *Id.* at 4,426. The notice further provided:

Although evidence is presently lacking, the need for the protections of the hazards identification standard may well be as great in some industries excluded from coverage as they are in those covered. Accordingly, OSHA invites comment on the appropriate scope of coverage. Employers currently excluded from the scope of the proposal may be included in the scope of the final standard if evidence in the record ultimately warrants such inclusion. They and others interest-

ed in this issue are therefore given notice that they should be prepared to participate in the rulemaking and provide justification, if they so desire, of why particular classes of employers should or should not be excluded.

*Id.* Thus, the 1981 notice of rulemaking gave notice that employers outside the manufacturing sector should comment and provide information at the scheduled hearings as to why their employees should or should not be excluded.

The 1981 notice of proposed rulemaking was withdrawn, however, on February 12, 1981 for further consideration of regulatory alternatives. *See* 46 Fed.Reg. 12,214 (1981). The notice of withdrawal did not suggest any change in the scope of coverage of any new proposal. Over a year later, a new notice of a proposed hazard communication rule and of public hearing on the proposal was published. *See* 47 Fed.Reg. 12,092 (1982). Like its February 12, 1981 predecessor, the 1982 notice referred to the 1975 Advisory Committee Report. *See id.* Like the 1981 proposed standard, the 1982 proposed standard was also to be applicable to employers in the manufacturing sector. The notice provided, however:

> Although non-manufacturing employers are not covered by the proposal, it is expected that their employees will also benefit from it to a great extent since employees in the manufacturing sectors will be required to send the hazard-related information downstream to their customers. Once finalized and implemented, its effectiveness in triggering downstream transmittal could be assessed, and determinations made as to the type of hazard communication standard that may be effective and beneficial for other industries, such as construction or agriculture. If necessary, the proposal could be extended *or modified* for these other industries at a later date.

> Comment is hereby invited on the appropriateness of the industry scope selected, and whether other industries should be included in the final standard if the record warrants it.

*Id.* at 12,101–02. Thus, as in the 1981 notice of rulemaking, employers outside the manufacturing sector were given notice that the hazard communication standard might be applied to them, and were invited to comment.

On November 25, 1983, almost thirteen years after section 6(b)(7) was enacted, and over seven years after the Secretary received the Advisory Committee Report, a final hazard communication standard was published. *See* 48 Fed.Reg. 53,280 (1983) (codified at 29 C.F.R. § 1910.1200 (1986)). Consistent with the Advisory Committee recommendation, it places primary responsibility for the identification of hazardous substances on their manufacturers and importers, requiring them to prepare MSDSs and to place hazard communication information on labels. *See United Steelworkers v. Auchter*, 763 F.2d at 732–33. It also requires that covered employers make the MSDSs available for employee inspection, 29 C.F.R. § 1910.1200(g)(8) (1986), and "provide employees with information and training on hazardous chemicals in their work area ...," 29 C.F.R. § 1910.1200(h) (1986). The final rule protects only employees in the manufacturing sector. Since all chemical manufacturers are in that sector, however, the only significance of limiting the rule to the manufacturing sector is with respect to the employers' obligation to make MSDSs available to their employees and to provide employees with hazard information and training. All employees outside the manufacturing sector are downstream from those upon whom the labeling and identification obligations are imposed. As the standard currently reads, it does not require producers or intermediate suppliers of hazardous substances to provide either MSDSs or properly labeled containers to users in industries outside the manufacturing sector. Both producers and intermediate suppliers must, however, transmit MSDSs and labeled containers to manufacturing sector employers. In addressing the burden of this requirement on intermediate suppliers, OSHA noted that "[t]he additional costs ... incurred by these employers ... [will] be minimal [because they] will merely be passing on information obtained

from the chemical manufacturers." 48 Fed.Reg. at 53,331.

In justifying the narrow scope of the final rule, the Secretary explained:

Although hazardous chemicals are used in other industries as well, OSHA determined that the employees in the manufacturing sector are at the greatest risk of experiencing health effects from exposure to hazardous chemicals. The Agency thus decided to exercise its authority to set priorities for standards for promulgation under Section 6(g) of the Act, and limited the proposed standard's scope to the manufacturing sector.

48 Fed.Reg. 53,284 (1983). The Secretary explained, further:

It should be emphasized that the Agency does not believe that employees in other industries are not exposed to hazardous chemicals, or that they should not be informed of those hazards. OSHA has merely exercised its discretion to establish rulemaking priorities, and chosen to first regulate those industries with the greatest demonstrated need.

*Id.* at 53,286.

### II.

In the prior case, the petitioners here, among others, petitioned this court for review of the final standard. They challenged the limited scope of the hazard communication standard, contending that it should not have been limited to the manufacturing sector. Petitioners argued that the exclusion of non-manufacturing industries, many of which have a high incidence of chemical injuries and illnesses, was not supported by the rulemaking record and contravened the purposes of the OSH Act. *See* 763 F.2d at 737.

On the other hand, the Secretary defended the limited scope of the standard solely on the ground that, under 29 U.S.C. § 655(g), he had unreviewable discretion to establish rulemaking practices and chose to address the sector with the most serious problems first. In *United Steelworkers*, we expressly rejected the Secretary's position, holding that he had no discretion to "exclude a particular industry [unless] he

informs the reviewing court, not merely that the sector selected for coverage presents greater hazards, but also why it is not feasible for the same standard to be applied in other sectors where workers are exposed to similar hazards." 763 F.2d at 738. That holding was made with full cognizance of the fact that what was in issue with respect to the non-manufacturing sectors was only the employer obligation to communicate the hazard information already prepared by chemical manufacturers, importers, and distributors to employees. Our prior decision is unequivocal:

We hold, therefore, that the petitions for review of those petitioners who object to the limitation of the Hazard Communication Standard must be granted.... Thus the Secretary will be directed to reconsider the application of the standard to employees in other sectors *and to order its application to other sectors unless he can state reasons why such application would not be feasible.* 29 U.S.C. § 655(b)(5).

763 F.2d at 739 (emphasis added). Moreover, our July 8, 1985 judgment is equally unequivocal. The Secretary was directed "to reconsider its application in other sectors *and to order its application in those sectors unless he can state reasons why such application would not be feasible."* *United Steelworkers v. Auchter,* Nos. 83–3554, 83–3561, 83–3565, 84–3066, 84–3093, 84–3128 (3d Cir. July 8, 1985) (Judgment) (emphasis added). It cannot be seriously contended that that direction permitted the Secretary to do anything other than consider, on the basis of the rulemaking record which we had before us in 1985, the issue of feasibility of communication of hazard information to employees in the non-manufacturing sectors.

### III.

Despite the language of our opinion and of our judgment, on November 27, 1985 the Secretary issued an advanced notice of proposed rulemaking, claiming that the record was insufficient on the issue of the feasibility of expanding the applicability of the standard. The 1985 notice solicited com-

ment on present hazard communication practices in sectors other than manufacturing and on the likely economic impact of extending the hazard communication standard to fifty non-manufacturing industry groups.[1] *See* 50 Fed.Reg. 48,794 (1985). The notice fixed a ninety-day period for comments. It posed nine groups of questions seeking information about the industries not covered by the rule,[2] and three groups of questions about possible modifications of the standard as written. We conclude that this further inquiry was unnecessary.

Some of the questions could hardly have been posed with the serious intention of obtaining meaningful information, since the answers are self-evident. For example, the Secretary asked "Are containers labeled? Are material safety data sheets available for the hazardous chemicals?" The standard already in place when these questions were posed required that the chemical manufacturer or importer label containers and prepare material safety data sheets. The Secretary also asked, "Does [the] industry have fixed work sites?", knowing full well that the construction industry does not. The Secretary asked "Does [the] industry have transient workers?", knowing full well that the agricultural industry does.

Moreover, most of the remaining detailed questions could have been equally applicable to manufacturing sector employers. Yet the Secretary had not found it necessary to ask them of those employers in the

---

1. In contrast with his position with respect to hazard communication in non-manufacturing sectors, the Secretary apparently had no difficulty in complying with that part of our judgment directing him "to reconsider a trade secret definition which will not include chemical identity information that is readily discoverable through reverse engineering" and "to adopt a rule permitting access [to trade secret information] by employees and their collective bargaining representatives." 763 F.2d at 743. The Secretary, without further rulemaking, promptly issued an interim final rule complying with these directions. *See* 50 Fed.Reg. 48,750 (1985).

2. The questions asked about uncovered industries are:

1. Please indicate the industry or industries to which the information supplied applies (by SIC Code if possible).

2. What is the current industry practice regarding hazard communications? Do employers generally have written hazard communication programs? Are containers labeled? Are material safety data sheets available for the hazardous chemicals? Are employees trained regarding the hazards and appropriate precautionary measures?

3. What are the costs associated with the aspects of hazard communication that are currently implemented in the industry? Please indicate by specific activity if possible, i.e., costs for training, labels, etc. Based on the present provisions of the Hazard Communication Standard, what additional costs are estimated to be incurred if the standard were extended to your industry?

4. If OSHA extended the provisions of the Hazard Communication Standard to this industry as written, what problems might arise in obtaining or transmitting hazard information? (For example, are there special problems associated with the agricultural industry or small businesses?) What solutions to these problems can you suggest that would still result in employees getting the information they need?

5. Does this industry have fixed work sites? If not, is there some central point where information could be made accessible?

6. Does this industry have transient workers? What current practices are used to ensure such workers are apprised of the hazards they may encounter on the site? Is there training or information specific to the types of jobs performed?

7. To what extent are hazardous chemicals purchased from retail distributors? How is information obtained about these chemicals when purchased from these types of establishments? Do the retail distributors provide hazard information? Are manufacturers contacted directly for the information? If so, has this been a successful approach? Are employees exposed to the chemical involved without receiving information about the specific hazards? How is a determination made regarding the appropriate protective measures to be implemented in this situation?

8. Are "consumer products" used in this industry in a manner that results in different exposure levels than would be encountered in consumer usage? What types of products are these? How is hazard information obtained for these products?

9. Is this industry subject to state-initiated "right-to-know" laws? What has been the industry's experience under such state laws? Are there particular provisions that have been difficult to implement in this industry? If so, what alternative provisions are suggested to ensure employees received the necessary information? To what extent is the industry complying with the state laws?

50 Fed.Reg. at 48,795.

June 28, 1977 advance notice of proposed rulemaking, 42 Fed.Reg. 5,372, in the January 16, 1981 notice of proposed rulemaking, 46 Fed.Reg. 4,412, or in the March 19, 1982 notice of proposed rulemaking, 47 Fed.Reg. 12,092. Nevertheless, the Secretary was able to determine that the hazard communication standard could feasibly be applied in the manufacturing sector. In addition, as noted in Part I above, the 1977 and 1981 notices requested comment from employers in the non-manufacturing sectors and gave notice that the rule might be extended to them. Finally, even today the Secretary, responding to petitioners' motion, does not point to any information received as a result of the November 27, 1985 notice of rulemaking which was not either known or readily ascertainable prior to our last decision. Although the comment period specified in the November 27, 1985 notice expired on February 25, 1986, we have been given no plausible explanation for the delay in formulating a rule between then and now, or for the further proposed delay until early 1988.

■ We hold the Secretary is not in compliance with our previous judgment. As he well understood with respect to the trade secrets issues, that judgment did not contemplate going back to square one. It contemplated action by the Agency on the record which we reviewed. That record was developed after notice to all interested parties that they should furnish "cost data of the estimated costs of coming into compliance with the recommendations of the advisory committee." 42 Fed.Reg. at 5,373. The hazard communication standard adopts essentially the same scheme as the Advisory Committee proposed. The 1977 notice was not limited to the manufacturing sector. Although subsequent notices proposed such limited application, they put interested parties on notice that the application might be broader and invited comment in light of that possibility. The final standard included importers and distributors who had previously been excluded from coverage. *See* 48 Fed.Reg. at 53,331.

■ An agency may adopt a scope which is "different—even substantially differ-

ent—from the proposed rule" without engaging in a whole new round of notice and comment. *See American Iron & Steel Institute v. EPA*, 568 F.2d 284, 293 (3d Cir. 1977) (*citing International Harvester Co. v. Ruckelshaus*, 478 F.2d 615, 632 n. 51 (D.C.Cir.1973)). *See also United Steelworkers of America v. Marshall*, 647 F.2d 1189, 1221 (D.C.Cir.), *cert. denied*, 453 U.S. 913, 101 S.Ct. 3148, 69 L.Ed.2d 997 (1981). Indeed, the Secretary had no difficulty justifying the inclusion of importers and distributors, by noting that "[t]he additional cost ... incurred by these employers ... [will] be minimal [because they] will merely be passing on information obtained from the chemical manufacturers." 48 Fed.Reg. at 53,331. As petitioners point out, this is equally true of all non-manufacturer user employers. Plainly, the ease with which the same information can be utilized by those employers can be easily determined from the information already in the record. We proceeded in the prior case on that assumption.

The Secretary, relying on *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978), contends that he should be free to discharge the task of implementing section 6 of the OSH Act at a pace selected in his discretion. *Vermont Yankee* is not relevant, however, for the case is before us at an entirely different stage. Our prior decision considered rulemaking after full rulemaking procedures had taken place. Moreover, we are not dealing with the modification of a standard based on considerations arising after promulgation of an initial standard. Thus, the Secretary's *Vermont Yankee* argument is no more than an effort to relitigate the contention, explicitly rejected in *United Steelworkers of America v. Auchter*, 763 F.2d at 738, that his priority-setting authority permits him, without explanation, to exclude categories of workers from a duly promulgated standard.

## IV.

Sixteen years after Congress directed the Secretary to "prescribe the use of labels or

other appropriate forms of warnings as are necessary to insure that employees are apprised of all hazards to which they are exposed", 29 U.S.C. § 655(b)(7), no standard has been promulgated covering approximately two thirds of all workers covered by the OSH Act. This court is empowered by the Administrative Procedure Act to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1) (1982). Moreover, we may issue "all writs necessary or appropriate in aid of" our jurisdiction. 28 U.S.C. § 165(a) (1982). Thus, we can issue orders necessary or appropriate to the enforcement of our prior judgment. Exercising the powers conferred by both statutes, we will direct that the Secretary shall, within sixty days of the date of our order,[3] publish in the Federal Register a hazard communication standard applicable to all workers covered by the OSH Act, including those which have not been covered in the hazard communication standard as presently written, or a statement of reasons why, on the basis of the present administrative record, a hazard communication standard is not feasible. Such reasons will be supplied separately as to each category of excluded workers. Because our prior judgment did not include a specific time limit we will deny, at this time, the petitioners' motion to hold the respondents in contempt.

---

**3.** Judge Kelly would grant 120 days for compliance.